# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT W. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-871-R |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert W. Johnson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record.[1] The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

---

[1] Citations to the administrative record, Doc. No. 10, are as "R. ___," using the pagination assigned by the SSA in the certified copy of the transcript of the administrative record.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI benefits on June 30, 2010, alleging a disability onset date of July 1, 2008, which was later amended to June 30, 2010. R. 11, 23. Following denial of his application initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 9, 2012. R. 21-39. The ALJ issued an unfavorable decision on April 18, 2012. R. 11-17. The SSA Appeals Council denied Plaintiff's request for review. R. 1-3. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had never engaged in substantial gainful activity. R. 13. At step two, the ALJ determined that Plaintiff had the severe impairments of "panic attack[s] without agoraphobia, recurrent major depression severe moderate without psychotic features, a history of poly substance abuse in sustained remission, and alcohol abuse in sustained remission." R. 13. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), finding:

[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He can remember, understand, and carry out simple instructions

and job tasks; interact with co-workers and supervisors on a superficial basis; and make adaptation to work situations and respond appropriately to changes in work settings. He [cannot] relate to and interact with the general-public.

R. 14. At step four, the ALJ found that Plaintiff had no past relevant work and, thus, could not return to such work. R. 16.

Proceeding to step five, the ALJ considered whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in light of Plaintiff's age, education, work experience, and RFC. R. 16. Finding that Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," the ALJ determined that the step-five analysis could be made solely on the basis of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (the "Grids"). R. 16-17. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act since June 30, 2010, the date his application was filed. R. 17. The SSA Appeals Council denied review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1; *see also* 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

*A. Whether the ALJ Properly Assessed Plaintiff's Nonexertional Limitations*

Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility with respect to the panic attacks and to the problems with concentration and attentiveness that Plaintiff allegedly experiences. Pl.'s Br., Doc. 13, at 11-15. Plaintiff argues that, as a result of this deficiency, the ALJ's RFC finding is not supported by substantial evidence. *Id*. The undersigned agrees.

At the administrative hearing, Plaintiff testified that he has depression and difficulty staying on task. R. 28, 29-30, 34. Plaintiff also testified that he regularly suffers panic attacks, for which he had been seeking treatment from a psychiatrist and counselor for three and one-half years. R. 28. He stated that he experiences small attacks

daily and intense attacks approximately twice per month. R. 32-34. In a small attack, Plaintiff has racing thoughts, loss of breath, and increased heart rate. R. 32. In an intense attack, he has the same symptoms plus dizziness, but the attack may last approximately two hours. R. 32-33. One trigger for the attacks, according to Plaintiff, is "the thought of . . . staying on task" and "being able to stay on a schedule." R. 34.

Plaintiff's assertion that he experiences panic attacks and depression is reflected in medical treatment notes and diagnoses extending over several years. *See, e.g.*, R. 186-195, 252-62, 335-45; R. 245 (Psychiatric Review Technique noting "MER shows pt. having trouble with panic attacks and anxiety over the past couple of years."). The consultative examiner diagnosed Plaintiff with panic disorder and depression and stated that "[t]he prognosis of significant improvement in [Plaintiff's] functioning during the coming twelve months is considered to be poor." R. 214. The ALJ found that Plaintiff suffers from the severe impairments of panic attacks and depression and, in his credibility assessment, stated that he "is convinced that [Plaintiff's] psychiatric disorders impose[] moderate restrictions of activities of daily living; marked difficulties of maintaining social functions; [and] moderate difficulties of maintaining concentration, persistence, or pace." R. 13, 16.

Having found that Plaintiff was subject to "severe impairment(s)" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments. *See* R. 13; 20 C.F.R. §§ 416.920(a)(4)(ii), (c), (e), (g). An RFC assessment is a determination "of an individual's ability to do sustained work-related physical and mental activities in a work

5

setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). As further explained by the Tenth Circuit:

> When a claimant suffers from a severe mental impairment that does not meet or equal the criteria of the listings for mental disorders, the determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity. In assessing a claimant's mental RFC, the ALJ should consider, among other things, the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.

*Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A), (C)) (alteration, citation, and internal quotation marks omitted).

Despite his finding that Plaintiff suffered from severe mental impairments and being presented with evidence of limitations caused by those impairments (including panic attacks up to two hours in length, during which Plaintiff is unable to focus), the ALJ did not include in the RFC any specific nonexertional limitations reflecting those limitations. *See* R. 13, 14-16.[2] The ALJ found that Plaintiff had no exertional limitations and, thus, could perform work in all exertional categories. R. 14. As for nonexertional limitations, the ALJ found that Plaintiff's mental impairments limited him to work

---

[2] For purposes of the Social Security Act, "exertional" abilities are the "primary strength requirements" used to classify occupations as sedentary, light, medium, heavy, and very heavy. *See* SSR 83-14, 1983 WL 31254, at *1 (Feb. 26, 1979). All other occupation-related demands, including mental abilities, are "nonexertional." *Id.*

6

involving simple instructions and job tasks, superficial interaction with coworkers and supervisors, and no interaction with the general public. R. 14.

The general nonexertional limitations found by the ALJ do not address the evidence of the *functional restrictions* associated with Plaintiff's panic attacks. "The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). An ALJ may not pick and choose among uncontroverted medical evidence, taking only those parts that are favorable to a finding of nondisability. *Cf. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Confere v. Astrue*, 235 F. App'x 701, 704 (10th Cir. 2007). Though "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10; *see also* 20 C.F.R. § 416.920(a)(3). Further, when "the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him [or her], the proper remedy is reversal and remand." *Baker v. Bowen,* 886 F.2d 289, 291 (10th Cir. 1989). Here, in light of the significantly probative evidence of limitations caused by Plaintiff's mental impairments—including two panic attacks per month when Plaintiff is unable to function for approximately two hours and daily attacks when Plaintiff is unable to function for some lesser time period—the ALJ was obligated to accept that evidence or explain why he was rejecting it.[3]

---

[3] Other statements by the ALJ indicate a similar failure to discuss contrary evidence. The ALJ stated that "[r]epeated mental status examinations" show "some ongoing anxiety and depression . . . ." R. 15. These examinations reflect not just "some" but consistent

7

The missing analysis is not supplied through the ALJ's credibility assessment. SSA regulations require that the RFC finding be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints. *Poppa*, 569 F.3d at 1170-71 (citing 20 C.F.R. §§ 416.929, 416.945). As "the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa*, 569 F.3d at 1171. Here, the ALJ provided a generally adequate explanation of his assessment of Plaintiff's credibility insofar as Plaintiff's subjective complaints. R. 15-16. After discussing various considerations, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 16. However, although the ALJ mentioned that one of Plaintiff's complaints is panic attacks, he did not directly analyze the evidence of the impact of those attacks. R. 15-16. If the ALJ rejected the specific limitations that Plaintiff testified result from his panic attacks, the ALJ was obligated to explain why the evidence did not support that particular testimony. *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that

---

anxiety and depression, including diagnoses of moderate to severe impairment caused by those conditions. *See*, *e.g.*, R. 186-95; 252-62; 335-45. The ALJ also states that Plaintiff has "experienced a good response to psychiatric treatments and psychotropic medication therapies." R. 15. The ALJ's discussion does not reflect the consultative examiner's opinion that "[t]he prognosis of significant improvement in [Plaintiff's] functioning during the coming twelve months is considered to be poor" or for that matter the examiner's assessments of panic disorder and depression. *See* R. 15-16; R. 214.

credibility findings "should be closely and affirmatively linked to substantial evidence" (internal quotation marks omitted)).

As a result of these deficiencies, the ALJ's RFC finding is not supported by substantial evidence. Accordingly, the matter should be remanded to the Commissioner for further proceedings.

### B. Whether the ALJ Improperly Applied the Grids Rather Than Obtaining the Testimony of a Vocational Expert

Plaintiff's also alleges that "[t]he ALJ erred by not securing the testimony of a vocational expert ("VE")." Pl.'s Br. at 4. More specifically, Plaintiff contends that the mental limitations in Plaintiff's RFC precluded the ALJ from exclusively relying on the Grids, and, thus, the testimony of a VE was needed for the ALJ to complete step five of the sequential evaluation. *Id*. at 4-11.

A person claiming benefits under the Social Security Act bears the burden of proving a prima facie case of disability—i.e., that the claimant, as evaluated in steps one through four, has a medically determinable impairment that prevents the performance of his or her past relevant work. *Heard v. Barnhart*, 110 F. App'x 88, 90 (10th Cir. 2004); *see* 20 C.F.R. § 416.920. At step five, the burden shifts to the Commissioner to show there are sufficient alternative jobs that the claimant, in light of his or her medical-vocational profile, can perform. *Heard*, 110 F. App'x at 90. The Grids provide one method for the Commissioner to meet this burden. The Grids are tables that direct a step-five conclusion—either disabled or not disabled—based on the application of certain medical-vocational factors (e.g., age and education) to the standard exertional categories

of sedentary, light, and medium work. *See* SSR 83-12, 1983 WL 31253 (Feb. 26, 1979); *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P, app. 2. If there is not a table rule that accurately describes a claimant's abilities and limitations, the Grids may not be used. *Campbell*, 461 U.S. at 462 n.5. In that event, the Commissioner must obtain evidence from a vocational resource regarding the step-five assessment. *See* SSR 83-12, 1983 WL 31253, at *2.

Generally, the Grids may not be relied on if a claimant's impairments prevent him or her from performing the full range of one of the exertional categories of work. *Channel v. Heckler*, 747 F.2d 577, 579-80 (10th Cir. 1984). An exception occurs if the ALJ determines that the claimant's particular nonexertional limitations would have very little effect on the occupational base for that exertional category, in which case the step-five conclusion directed by the applicable table rule may be adopted without additional evidence from a vocational resource such as the testimony of a VE. *See id.* at 583 n.6; SSR 83-14, 1983 WL 31254, at *3-4, *6. In other words, reliance on the Grids is not precluded by the "mere presence of a nonexertional impairment," but only if "the nonexertional impairments are significant enough to limit the range of jobs available in a given work category." *Mitchell v. Astrue*, 498 F. App'x 757, 759 (10th Cir. 2012) (internal quotation marks omitted); *Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013) (internal quotation marks omitted).

As noted above, the ALJ found that Plaintiff had no exertional limitations but that Plaintiff's mental impairments limited him to work involving simple instructions and job tasks, superficial interaction with coworkers and supervisors, and no interaction with the

10

general public.  R. 14.  At step five, the ALJ held that these mental limitations did not preclude application of the Grids, stating without further analysis or explanation: "The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations.  However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels."  R. 16-17.  On that basis, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period.  R. 17.

Plaintiff argues that the ALJ's exclusive reliance on the Grids was improper in light of the mental limitations at issue.  Pl.'s Br. at 4-8.  The Commissioner responds that the Tenth Circuit, in *Mitchell*, affirmed application of the Grids in nearly identical circumstances.  Def.'s Br., Doc. 14, at 5-6 (citing *Mitchell*, 498 F. App'x at 759-60).  In *Mitchell*, the ALJ had found the claimant able to perform light work, but—as here, at least as found by the ALJ—only to the extent such work involved simple instructions and job tasks, superficial interaction with coworkers and supervisors, and no interaction with the general public.  *Mitchell*, 498 F. App'x at 759.

The applicability of *Mitchell* to this case is vitiated by the undersigned's prior determination that the ALJ's RFC assessment did not properly consider all relevant nonexertional limitations.  Regardless, present in *Mitchell*—and altogether missing here—was an express analysis of how the plaintiff's specific limitations, in the context of the medical evidence and record in that case, affected the plaintiff's occupational base.  In *Mitchell*, the Tenth Circuit explained that "[w]hile an ALJ may determine that a nonexertional impairment has only a negligible effect on the range of jobs available, he

11

'must back such a finding of negligible effect with the evidence to substantiate it.'" *Id.* (quoting *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987)). The *Mitchell* court upheld the ALJ's decision upon finding that the ALJ had "supported his use of the [G]rids with a discussion of [the claimant's] mental impairment, its effect on job performance under SSR 85-15, and [the claimant's] continuing ability to perform a substantial majority of light unskilled work." *Id.* at 760.

Here, there is no such discussion, only a conclusory statement. The ALJ did not cite to any evidence or authority for his conclusion that Plaintiff's mental limitations had an insignificant effect on Plaintiff's occupational base. R. 16-17. Though the Commissioner claims that "[h]ere, as in *Mitchell*, the ALJ specifically cited SSR 85-15 as support for his step-five determination," Def.'s Br. at 6, the ALJ only cited SSR 85-15 for the generic proposition that the Grids may be used as a framework when nonexertional limitations are at issue. The ALJ did not, as in *Mitchell*, discuss the definitions and limitations set forth in SSR 85-15 or apply such definitions and limitations to Plaintiff's circumstances. Because the ALJ failed to provide the required analysis, the matter should be remanded to the Commissioner for further proceedings.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by December 10, 2014. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 26th day of November, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE